STEINHARDT & BRO. *et al. v.* UNITED STATES (No. 1159).[1]

RIBBON WIRE NOT ROUND IRON OR STEEL WIRE.

   The merchandise is commercially known as "ribbon wire," but it is not thereby brought within the terms "round iron or steel wire," as used in paragraph 135, tariff act of 1909. It is not, in fact, a round steel wire, but is a flat article; it is not a steel article, but one made partly of steel and partly of cotton fabric. It was assessed under the proviso of that paragraph as a manufacture of round steel wire covered with cotton. This assessment, in view of the issues, will not be disturbed.

## United States Court of Customs Appeals, October 31, 1913.

APPEAL from Board of United States General Appraisers, G. A. 7443 (T. D. 33260)

[Affirmed.]

*Comstock & Washburn* (*John A. Kratz, jr.,* of counsel) for appellants.
*William L. Wemple,* Assistant Attorney General (*Martin T. Baldwin,* assistant attorney, of counsel), for the United States.

   Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

   The merchandise here is so-called ribbon wires. These consist of flat strips of woven cotton material, about one-fourth inch in width, containing three round steel wires, one on each edge and the other in the middle of the strip. It was assessed for duty under the proviso to paragraph 135 of the tariff act of 1909 as a manufacture of round steel wire covered with cotton at 40 per cent ad valorem. The importers protested the assessment and, upon hearing, the Board of General Appraisers overruled the protests.

   The contention made here by the importers is that the merchandise is dutiable as round steel wire at the appropriate rate for gauge, which it is agreed is smaller than 16 wire gauge, and which rate the importers concede should not be less than 35 per cent ad valorem.

   The material portions of paragraph 135 are here inserted:

   135. Round iron or steel wire, not smaller than number thirteen wire gauge, one cent per pound; smaller than number thirteen and not smaller than number sixteen wire gauge, one and one-fourth cents per pound; smaller than number sixteen wire gauge, one and three-fourths cents per pound: *Provided,* That all the foregoing shall pay duty at not less than thirty-five per centum ad valorem; * * * *Provided further,* That articles manufactured wholly or in chief value of any wire or wires provided for in this paragraph shall pay the maximum rate of duty imposed in this section upon any wire used in the manufacture of such articles and in addition thereto one cent per pound: *And provided further.* That no article made from or composed of wire shall pay a less rate of duty than forty per centum ad valorem; * * *.

The importers argue that the uncontradicted evidence establishes that the merchandise is commercially known as ribbon wire, is therefore commercially wire, and so dutiable as claimed by them.

Conceding the evidence to establish the fact that this wire is commercially known as ribbon wire, we do not think it is thereby brought within the commercial meaning of the words "round iron or steel wire" as used in paragraph 135. Such evidence does not establish that the trade and commerce of the country recognize this merchandise, which, according to the record, takes the name of ribbon wire in commerce because of the fact that it is used in millinery purposes to preserve the shape and position of ribbons, as a round iron or steel wire.

We reached a similar conclusion in United States *v.* Walter (4 Ct. Cust. Appls., 95; T. D. 33371), where it was held that a showing that an article was commercially known as ladder tapes did not bring the same within the meaning of the word "tapes" as used in paragraph 349 of the tariff act of 1909.

The description of the merchandise itself makes against the importers' claim as to the effect of the proof of commercial designation. It is not in fact a round steel wire, but is a flat article; it is not steel, but it is in part of steel and in part of cotton fabric.

We think the Board of General Appraisers correctly overruled the protests.

As stated, the merchandise was assessed by the collector at 40 per cent ad valorem under the last proviso of paragraph 135, and, although the question is suggested by the Government, we are not called upon to decide whether or not it should have been assessed as an article composed wholly or in part of metal under paragraph 199 because that question is not raised by the importers' appeal. It is sufficient to say that the importers' present contention is not well founded.

The Government makes the claim here that the appeal should be limited to the particular protests of A. Steinhardt & Bro., who are named as the petitioners in the application for review, and that the words "*et al*" and the reference to Schedule A, which is made part of the petition for review, should be given no force and effect.

Said Schedule A contains the entry numbers, the names of the importing vessels, the dates of entry, and the protest numbers.

Manifestly, in view of the conclusion we have reached on the merits, this last claim is of no present importance to the Government. The views we have expressed on a like question, however, in the case of Meyer & Lange *et al. v.* The United States, *infra,* page 422, in which opinion is handed down concurrently herewith, may be taken as determinative of this claim.

The judgment of the Board of General Appraisers is *affirmed.*