McENANY v. UNITED STATES (No. 1863).[1]

CONSTRUCTION, PARAGRAPHS 3 AND 46, TARIFF ACT OF 1913—"ACETONE"—"DIS-
TILLED OILS"—ACETONE OIL.

A by-product obtained in the distillation of acetone from acetate of lime, known
commercially as "acetone oil," but not known commercially as an oil, shown not
to be an oil, used in the same industries and for many of the same purposes as acetone,
is a kind of acetone, and not a kind of oil. It is classifiable as acetone under para-
graph 46, tariff act of 1913, and not as a distilled oil under paragraph 3.

United States Court of Customs Appeals, March 20, 1918.

APPEAL from Board of United States General Appraisers, G. A. 8073 (T. D. 37248).

[Reversed.]

*Joseph F. Lockett* and *Goodwin, Procter & Ballentine* for appellant.

*Bert Hanson,* Assistant Attorney General (*Charles D. Lawrence* and *Harry M. Farrell,*
special attorneys, of counsel), for the United States.

[Oral argument Feb. 14, 1918, by Mr. Lockett and Mr. Lawrence.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise is a liquid called acetone oil. It is imported into
this country in barrels or tank cars from Canada.

The collector assessed it with duty at the rate of 20 per cent ad
valorem under the classification of "distilled oils" in paragraph 46
of the tariff act of 1913.

The importer protested against the assessment, claiming the mer-
chandise to be dutiable at 1 cent per pound under the provision for
"acetone" in paragraph 3 of the act, or alternatively at 15 per cent
ad valorem as a nonenumerated manufactured article under para-
graph 385.

The protest was submitted upon testimony to the Board of Gen-
eral Appraisers, and was overruled by a majority decision of the
board. The importer appeals.

The issue which the protest tenders, therefore, is whether the
imported acetone oil should have been assessed under the eo nomine
provision for acetone, or under that for distilled oils, or as a non-
enumerated manufactured article.

Acetone is a limpid, colorless liquid, having an etherlike odor and
a biting taste. It mixes in all proportions with water and alcohol,
and readily dissolves resins, fats, and waxes. It serves as a solvent
for guncotton in the manufacture of cordite and pyroxylin. It
enters into the preparation of chloroform, also the manufacture of
smokeless powder, artificial leather, resin lacquers, antifouling liquid
for ships' bottoms, imitation cork, artificial rubber, imitation tex-
tiles, and artificial silk. Its uses in industry are, indeed, very numer-
ous, but practically all of these, however, depend upon its charac-

[1] T. D. 37598 (34 Treas. Dec., 319).

teristic effectiveness as a solvent. Chemically it is a ketone, possessing an individual chemical symbol.

Acetone oil is a by-product which is obtained when acetone is distilled from gray acetate of lime. That material is subjected to a process of dry fractional distillation which first produces a mixed liquid composed of crude acetone and acetone oil. This liquid is again distilled, this time by means of steam coils, and commercial acetone is thereby recovered, leaving again a liquid composed of mixed acetone and acetone oil. The latter product is again subjected to fractional distillation whereby it also is separated into commercial acetone and a residuum which is the liquid acetone oil of the present importation. This is yellowish brown in color, acrid in taste, pungent and disagreeable in odor, and inflammable. It is soluble in water.

Chemically acetone oil is a mixture of higher ketones, having, however, no specific symbol of its own, since the constituent ketones possess their own several symbols. Like acetone its chief property is its power as a solvent; it readily dissolves resins, fats, and waxes. It will practically dissolve everything which acetone will dissolve, and in many respects it is superior to acetone itself as a solvent. This superiority results in part from its higher boiling point, it being accordingly less volatile and slower in action than acetone, and in part from its lesser affinity for water. In general, however, it may be said in the language of one of the witnesses that "both acetone and acetone oil are produced together in a similar manner from the dry distillation of acetate of lime with its attendant impurities," and that "acetone oil is therefore produced from the same or similar material, in the same manner, at the same time, using the same apparatus as acetone," and that "the product itself is used in the same industries and for many of the same purposes as acetone."

In view of the physical characteristics of acetone oil it is apparent that it is not an oil in the ordinary signification of that word. The following extracts confirm this statement:

International Encyclopædia:

Oils.—A term applied to a large number of liquids characterized by being insoluble in water and being highly viscous.

Encyclopedia Britannica:

Oils.—In its most comprehensive ordinary acceptation the word embraces at present the fluid fixed oils or fatty oils (e. g., olive oil), the soft fats which may be fluid in their country of origin (e. g., coconut oil, palm oil), the hard fats (e. g., tallow), the still harder vegetable and animal waxes (e. g., carnaüba wax, beeswax), the odoriferous ethereal (essential) oils, and the fluid and solid volatile hydrocarbons—mineral hydrocarbons—found in nature or obtained from natural products by destructive distillation.

It may be recalled that the present fluid is not insoluble in water nor is it highly viscous, nor does it answer to any of the descriptions

last above set out. Indeed it is not strongly contended by the Government that the physical characteristics of acetone oil are such as to bring it within the ordinary definitions of the term "oil." Moreover it is manifest that it does not serve any of the commercial or industrial purposes for which oils in general are used. The Government, however, contends that the article has received in commerce the name of oil—that is, acetone oil—and therefore that it should be classified for duty as an oil. And, according to this claim, since it is produced by a process of distillation, it should be classified as a distilled oil.

We think, however, that the article is never listed in commerce under the simple heading of "oils" or "distilled oils," nor indeed is it ever described simply as an oil or as a distilled oil, but almost invariably it is referred to under the composite name of "acetone oil." And we think that this composite name is not intended or understood in commerce to signify that the substance itself is a kind or species of oil, but rather that it is a kind or species of acetone. The mere fact that the word "oil" is part of the composite name by which the article is known does not of itself suffice to bring it within the tariff classification of "oils," since the circumstances indicate that the associate term "acetone" is and should be regarded as the predominant factor in the name. The following extracts from the testimony illustrate this view:

Harry S. Mork.

Q. Now, you have testified that acetone oil is not an oil?—A. I have.

Q. You mean, I suppose, that it is not an oil in the strict chemical sense?—A. I should say in any sense.

Q. You have been speaking about it for the last two hours as an oil?—A. That is true, but commonly we refer to other things which are in no sense oil, oil of vitriol, which is sulphuric acid.

Robert C. Ingals:

Q. By Mr. LOCKETT. What does the term oil mean in the trade, if anything?—A. Oil in the trade includes oily, greasy liquids, such as linseed oil, the varnish and paint oils, fish oils.

Q. State whether or not acetone oil is similar to or would come within the scope of the distinction you give?—A. Distinctly not.

Q. For what reasons?—A. It is neither oily nor greasy—it is not considered an oil.

Q. By Mr. LAWRENCE. But is it not commercially known throughout the commerce as an oil?—A. No.

Q. Isn't it considered in the trade as acetone oil?—A. That is the name.

Q. Always been?—A. So far as I know.

The following cases deal with analogous instances of compound names: Warren Chemical Manufacturing Co. *v.* United States, 78 Fed., 810 (dead oil); S. C. 84 Fed., 638 (Aff.).; In re Southern Pacific Co., 82 Fed., 311 (creosote oil or dead oil); S. C. 87 Fed., 863 (Aff.); Matheson & Co. *v.* United States, 90 Fed., 275 (oil of mirbane);

United States v. Burlington Venetian Blind Co., 3 Ct. Cust. Appls., 378; T. D. 32967 (ladder tapes); (Henderson & Hall v. United States 4 Ct. Cust. Appls., 327; T. D. 33523 (fire sand); Steinhardt & Bro. v. United States, 4 Ct. Cust. Appls., 420; T. D. 33854 (ribbon wires).

We conclude, therefore, that acetone oil is not a distilled oil, commonly, chemically, or commercially, and that the community of its origin, character, and uses with acetone, taken together with the incorporation of that word within its compound name, indicate that Congress intended the eo nomine provision for acetone in the tariff act of 1913 to cover both substances alike. In this view of the case the article is an enumerated one, and consequently the similitude provision of the act need not be invoked. But if the foregoing view be rejected, and if the article be held to be unenumerated in the act, the resemblance of acetone oil to acetone in respect to origin, material, qualities, and uses would make it dutiable under the enumeration of acetone by the application of the similitude provisions contained in paragraph 386 of the act.

We therefore hold that the present importation was properly dutiable as acetone at 1 cent per pound, and that the protest should have been sustained to that effect. The majority decision of the board is therefore *reversed*.

---

## CONSTRUCTION OF RULE AS TO PRINTING RECORDS.[1]

UNITED STATES COURT OF CUSTOMS APPEALS,
*Washington, D. C., April 18, 1918.*

SIR: In reply to your statement (filed here April 6) relative to the printing of the record in the case of United States v. Johnson (No. 1886) and your letter of April 10, also relative thereto, I beg to advise you:

(1) Next to the last sentence in rule 8 provides that "records shall be properly indexed and printed under the direction of the clerk of the court."

(2) Under this rule it is the uniform practice of this office, in the absence of an agreement by the parties, to print that part of the record transmitted by the Board of General Appraisers, which is assembled and bound within a paper backing. This does not include detached exhibits or other papers forwarded by the board.

(3) If the appellant, who bears the expense of printing the record, desires to have a part or parts of these detached exhibits or papers printed as a part of the record, that would be done as a matter of course upon his request.

(4) If the appellee desires to have a part or parts of the detached exhibits or papers printed in the record, the appellant not agreeing

---

[1] T. D. 37599 (34 Treas. Dec., 323).

thereto, it is open to the appellee to bring the matter before the court by a motion.

(5) Under the practice outlined above it would seem that the rights of both parties are preserved. As a matter of fact this practice has met with no objection within my knowledge since the establishment of the court.

(6) In regard to the record in the Johnson case (No. 1886) items 4, 5, 6, and 7, which you request to be omitted, are detached exhibits inclosed in a separate envelope, and therefore will not be included in the printed record unless specially ordered.

Respectfully,

ARTHUR B. SHELTON, *Clerk.*

ASSISTANT ATTORNEY GENERAL, *New York.*