UNITED STATES *v.* HOYT, SHEPSTON & SCIARONI ET AL. (No. 3122)[1]

United States Court of Customs Appeals, February 16, 1929

*Charles D. Lawrence*, Assistant Attorney General (*John F. Kavanagh* and *Fred J. Carter*, special attorneys, of counsel), for the United States.
*Frank L. Lawrence* (*Martin T. Baldwin* of counsel) for appellees.

[Oral argument December 13, 1928, by Mr. Carter and Mr. Baldwin]

Before GRAHAM, Presiding Judge, and BLAND and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Sawed lumber, admitted to be Philippine lauan, exported from Shanghai, China, was imported at San Francisco under the Tariff

[1] T. D. 43236.

Act of 1922. It was classified by the collector as mahogany under paragraph 403 of said act, at 15 per centum ad valorem. The importer protested, claiming the merchandise to be free of duty under paragraph 1700, or, alternatively, dutiable as a not enumerated manufactured article under paragraph 1459 of said act. The United States Customs Court sustained the protest under said paragraph 1700 and the Government has appealed.

The relevant statutes are as follows:

PAR. 403. Cedar commercially known as Spanish cedar, lignumvitæ, lancewood, ebony, box, granadilla, mahogany, rosewood, satinwood, Japanese white oak, and Japanese maple, in the log, 10 per centum ad valorem; in the form of sawed boards, planks, deals, and all other forms not further manufactured than sawed, 15 per centum ad valorem; veneers of wood and wood unmanufactured, not specially provided for, 20 per centum ad valorem.

PAR. 1700. Wood: * * * sawed boards, planks, deals, and other lumber, not further manufactured than sawed, planed, and tongued and grooved; * * *.

Two contentions are made by the Government here. It is first claimed that the common meaning of the word "mahogany" includes the Philippine lauan; that the word is general and includes a large number of different species of trees, of which the lauan is one, of different families and genera, but all of which, because of similarity of use, are commonly known as mahogany. Secondly, it is claimed that even if the common meaning of the word "mahogany" may not be said to include the lauan, it has been established by the evidence in the case at bar that the commercial designation of the word "mahogany" includes Philippine lauan. The appellee takes issue with both these propositions.

Our first inquiry is as to the common meaning of the statutory term. The word "mahogany" is of unknown origin. The carpenter of Sir Walter Raleigh's ship, in one of that great explorer's trips to the Americas, had his attention called to the great beauty, hardness, and durability of the wood of this tree in 1595. The word was written "mohogeney" in 1671. The English word was adopted into botannical Latin by the botanist Linnaeus in 1762 as "mahagoni," thus originating the scientific designation by which the true mahogany has since been known, Swietenia mahagoni.

Various authorities give various definitions of the word "mahogany."

Murray's New English Dictionary defines the word as follows:

The wood of Swietenia Mahagoni (N. O. Cedrelaceae), a tree indigenous to the tropical parts of America, esp. Mexico, Central America, and the West Indies. It varies in color from yellow to a rich red brown, is remarkably hard and fine grained, and takes a high polish. Also with qualification denoting the special variety or place of origin, as Baywood, Cuba, Honduras, Jamaica, Spanish mahogany.

A secondary meaning is also given that the word is applied "chiefly with qualification" to various woods resembling mahogany, and thereupon the author gives a list of many varieties of woods, each designated as mahogany with a prefix. In this number, the lauan is not enumerated.

The Century Dictionary and Cyclopedia (vol. 6, p. 3579) thus defines mahogany:

*Swietenia Mahagoni*, belonging to the family *Meliaceæ*. It is native in the West Indies, Central America, Mexico, and the Florida Keys. Its importance lies in its timber.

2. The wood of the above tree. It combines a rich reddish-brown color, beauty of grain, and susceptibility of polish with unusual soundness, uniformity, freedom from warping, durability, and largeness of dimensions. On account of its costliness, its use is restricted mainly to furniture making, cabinet work, etc., often in the form of a veneer. The quality of the timber varies with the conditions of its growth, exposed situations and solid ground yielding the finest. Mahogany with figured grain is especially prized, and is obtained largely, but not exclusively, from the San Domingo and Cuba wood, called *Spanish mahogany*. The Honduras mahogany, or baywood, shipped from the Bay of Campeachy, is more open-grained and plain, and of larger dimensions, yielding logs sometimes 40 feet in length. The Mexican mahogany has the largest growth of all, is similar to the last named, and supplements its diminishing supply.

This authority also gives an enumeration of a large number of so-called mahoganies, each specified by a prefix. The lauan is not here enumerated.

The Encyclopaedia Britannica (11th ed., Vol. XVII, p. 399) defines mahogany as a dark-colored wood largely used for household furniture, the product of a large tree indigenous to Central America and the West Indies, known botanically as *Swietenia Mahogani*, and which is a member of the order *Meliaceæ*. The tree, according to this authority, bears compound leaves, resembling those of the ash, and clusters of small flowers, with 5 sepals and petals and 10 stamens which are united into a tube.

The New International Encyclopaedia (vol. 12, p. 705) defines mahogany as "the timber of a number of trees, the most highly esteemed being that of *Swietenia mahogani*, a large tree of the natural order *Meliaceæ*, native of the West Indies, Central and tropical South America." This authority recites that two other species of *Swietenia* also occur in Central America, and that another tree of the same natural order as *Swietenia* occurs in India, and is called mahogany. It is further stated that various other trees, notably eucalyptus, are sometimes called mahogany, with the prefixes according to the locality from which they come. The lauan is not mentioned as one of these.

Funk & Wagnalls New Standard Dictionary (1925) thus defines the word "mahogany":

1. A large tropical American tree (*Swietenia mahogoni*) of the bead-tree family (*Meliaceæ*).

2. Any one of various trees yielding a wood similar to the true mahogany

This authority then recites a list of trees which are called mahogany, with a prefix in each case. Among these appears the following: "Philippine m., the narra." The narra is defined by the same authority as "a tall tree (*Pterocarpus indicus*)."

Webster's New International Dictionary (1925) gives the following definition:

1. A tropical American meliaceous tree (*Swietenia mahagoni*), with pinnate leaves and panicles of small greenish flowers.

3. Any of many trees related to, or resembling, the mahogany; as, in Australia, species of eucalyptus; in India, various meliaceous trees of the genera *Soymida*, *Chukrassia*, and *Tona;* in Africa, *Khaya senegalensis;* in the United States, *Rhus integrifolia*, species of *Cercocarpus*, etc

The lauan is thus defined by Funk & Wagnalls New Standard Dictionary:

Lauan (P. I.). A valuable timber tree (*Anisoptera thurifera*) of the family *Dipterocarpeæ*. A fragrant resin, burned for incense in churches, is obtained from incisions made in the trunk. The wood is light and tough and much used in boat building.

It will be observed that each and all of these authorities give the primary meaning of the word "mahogany" to be the tree of the species *Swietenia mahagoni*. It is true they usually give a secondary meaning, where the word is used in a compound word, as being used to indicate a number of other trees. Even if this secondary definition might be accepted as defining the word "mahogany," which we are not here deciding, it will be observed that nowhere do any of these authorities state or indicate that the Philippine lauan tree is included in the list of trees thus indicated. Even in Funk & Wagnalls New Standard Dictionary, above quoted, and relied upon by appellant, the so-called Philippine mahogany is the narra, *Pterocarpus indicus*, an entirely different tree from the lauan.

No other authorities have come to our attention. In view of what has been quoted above, there is little ground for the contention that the Philippine lauan has ever been commonly known as mahogany, either with or without a prefix.

The record must be relied upon to disclose whether proof of commercial designation has been made sufficient to justify the classification of this merchandise as mahogany.

The importer in the first instance called and examined four apparently well-qualified lumber dealers, all of whom testified in substance that the imported wood was never bought or sold or known in

the trade as mahogany but as lauan or red lauan and occasionally as Philippine mahogany. It was thus incumbent upon the Government, if the classification as mahogany was to stand, to prove, by the greater weight of the evidence, that the word "mahogany" had a definite, uniform, and general trade meaning differing from its ordinary one, and that in the trade and commerce of the country, Philippine lauan was definitely, uniformly, and generally known as mahogany. The Government offered the depositions of four lumber dealers, two of whom were connected with the Indiana Quartered Oak Co. Their testimony followed the same lines. The following are typical questions and answers.

Witness H. R. Black:

Q. At that time (prior to September 21, 1922) was wood of the kind as represented by Exhibits 1 and 2 sold under a definite, uniform, and general term in the wholesale trade of the United States, and, if so, what was that term?—A. Yes, sir; wood of this general character was sold at that time under the name of Philippine mahogany.

Witness Willard Winslow, in answer to the same question:

It was sold as Philippine mahogany, that being the name given it by many departments of the Government since 1914.

The witnesses Herbert Mead and Alfred E. Edgecomb made substantially the same answers to the same questions.

None of these witnesses stated that the lauan tree was ever known in trade and commerce as "mahogany."

The court below, after hearing this testimony, found that commercial designation had not been established. In that conclusion we concur. This court has pointed out, in many cases, that testimony such as we have above noted does not establish commercial designation. It is not sufficient to establish commercial designation as mahogany to show that the article was designated as "Philippine mahogany." Hampton, jr., & Co. v. United States, 12 Ct. Cust. Appls. 490, T. D. 40695; Smith v. United States, 143 Fed. 691; United States v. Walter, 4 Ct. Cust. Appls. 95, T. D. 33371; McEnany v. United States, 8 Ct. Cust. Appls. 329, T. D. 37598.

Even if we might say that this evidence offered by the Government had a tendency to prove commercial designation as claimed, we would be unable to conclude that the evidence on this subject so preponderated in favor of the Government as to require a reversal of the judgment of the Customs Court. In such cases we have uniformly refused to disturb the judgment. La Manna, Azema & Farnan v. United States, 14 Ct. Cust. Appls. 289, T. D. 41908, and cases therein cited. As we remarked in the case cited, it is difficult to perceive how a commercial designation of an article may exist uniformly, definitely, and generally when qualified witnesses who know the trade and its

nomenclature testify as they do in this case that no such commercial designation exists.

Attention is called by appellant to the findings of the Federal Trade Commission of July 15, 1926, *in re* the Indiana Quartered Oak Co. and the judgment of the Circuit Court of Appeals of the Second Circuit, in *Indiana Quartered Oak Co.* v. *Federal Trade Commission*, reported in 26 Fed. (2d series) 340, wherein the said Indiana Quartered Oak Co. was enjoined from further selling said Philippine lauan as Philippine mahogany, the same being found to be unfair methods of competition and constituting a violation of the act entitled "An act to create a Federal Trade Commission, to define its powers and duties, and for other purposes," approved September 26, 1914. It is argued that to now extend to the importers of this material the privilege of entry free of duty is to only further aid them in their imposition and fraud upon the consumer of the United States. This may be true, but we are unable to discern how this situation may be aided any by a judicial finding by this court that these importers are not, in fact, practicing a fraud upon the purchasing public, but are, in truth, importing mahogany. Were we permitted to view this matter from its political or legislative angle, which we may not do, nothing useful would be accomplished by such a holding.

The judgment of the United States Customs Court is *affirmed*.