STEPHEN RUG MILLS *v.* UNITED STATES (No. 4477)[1]

---

[1] C. A. D. 293.

United States Court of Customs and Patent Appeals, December 11, 1944

*Benj. A. Levett* for appellant.

*Paul P. Rao*, Assistant Attorney General (*Joseph F. Donohue*, special attorney of counsel), for the United States.

[Oral argument October 4, 1944, by Mr. Levett and Mr. Donohue]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

The issue in this appeal arises from a judgment of the United States Customs Court, Second Division, overruling three protests of appellant against the classification of certain machine-woven small cotton rugs classified by the Collector of Customs at the port of New York under paragraph 921 of the Tariff Act of 1930 at the rate of 35 per centum ad valorem as "* * * other floor coverings, * * * wholly or in chief value of cotton * * *."

Appellant claimed the involved merchandise to be properly dutiable at the rate of 20 per centum ad valorem under said paragraph as amended by the trade agreement between the Belgo-Luxemburg Economic Union and the United States of America, effective May 1, 1935, T. D. 47600, as "imitation oriental rugs, wholly or in chief value of cotton."

The paragraph under which the merchandise was classified reads as follows:

PAR. 921. Rag rugs, wholly or in chief value of cotton, of the type commonly known as "hit-and-miss", 75 per centum ad valorem; chenille rugs, wholly or in chief value of cotton, 40 per centum ad valorem; all other floor coverings, including carpets, carpeting, mats, and rugs, wholly or in chief value of cotton. 35 per centum ad valorem.

and the pertinent portion of the trade agreement is:

SCHEDULE II

| Tariff Act of 1930 paragraph | Description of articles | Rates of duty |
|---|---|---|
| | * * * * * | |
| 921 | Imitation oriental rugs, wholly or in chief value of cotton | 20% ad valorem. |

In the manufacture of the goods, two rugs are produced on a machine loom at the same time, woven face to face, and cut apart, resulting in articles identical in appearance and generally of the same

weight. They are woven on the Jacquard principle so that the design and colorings are visible on the back as well as the face of the rugs.

They have design, style, or quality names such as "Avalon," "New Avalon," "Bedford," "New Bedford," and "Provincetown." The designs apparently are not of oriental character.

At the trial and here counsel for appellant admitted that the imported merchandise does not bear an oriental design and does not respond to the common meaning of the term used in the trade agreement, but contended that in the language of the wholesale trade the rugs are uniformly, definitely and generally known as, and are bought and sold as, "imitation oriental rugs, wholly or in chief value of cotton."

The issue was tried in New York and Philadelphia. Witnesses for both parties testified and numerous exhibits were received in evidence. The court thereafter rendered its judgment overruling all of the claims of appellant, holding in its decision that appellant had not established its claim and that therefore it was not necessary to summarize or discuss the testimony of witnesses for the Government.

It appears that prior to the effective date of the trade agreement rugs such as those here involved were assessed with duty at 35 per centum ad valorem under paragraph 921, *supra*. After the effective date of the trade agreement such rugs were held to be dutiable at 20 per centum ad valorem until an order of the Bureau of Customs in T. D. 49161, 72 Treas. Dec. 312, instructed the Collectors of Customs that cotton rugs similar to rugs of domestic manufacture sold under the names of "Trellis" and "Verdure" were not to be classified as the rugs defined in the trade agreement but were properly dutiable as floor coverings at 35 per centum ad valorem under said paragraph. Said instruction to the collectors became effective October 20, 1937. The reasonableness of the said instruction is conceded not to be in issue here.

Eight witnesses testified for appellant, most of whom had experience in buying and selling rugs similar to those here involved since before the passage of the present tariff act. Their testimony is to the effect that such rugs were bought and sold by them in the wholesale trade of the United States as imitation oriental rugs even though the designs thereon were not oriental, and that all such rugs, whether of oriental design or otherwise, were of the same material, quality, and construction and were bought and sold at the same prices for the same sizes and weights.

There is no question but that the rugs herein are of cotton and all of the testimony with reference to commercial designation was with respect to the involved and similar rugs.

The record for appellant shows that the merchandise here is, and

was at the time of the passage of the present tariff act, known definitely, generally, and uniformly as "imitation orientals," "imitation cotton orientals," and "cotton imitation oriental rugs."

Several of the witnesses for appellant were read the dictionary definition of the word "imitation" and were asked whether or not such definition differed from the trade understanding of that word as applied to the rugs herein, and they answered that it was the same. Several of the witnesses attempted to define the common meaning of "oriental rugs."

It is well-settled that the common meaning of a descriptive term used in a tariff act is a matter of law to be decided by the court, *United States* v. *Florea & Co., Inc.*, 25 C. C. P. A. (Customs) 292, T. D. 49396; *United States* v. *North American Mercantile Co.*, 17 C. C. P. A. (Customs) 378, T. D. 43820; *United States* v. *Ben Felsenthal & Co. et al.*, 16 Ct. Cust. Appls. 15, T. D. 42713, and that while the testimony of witnesses as to common meaning may be received, it is advisory only and the court is not bound by such testimony, *Absorbo Beer Pad Co., Inc.* v. *United States*, 30 C. C. P. A. (Customs) 24, C. A. D. 209; *United States* v. *R. E. Macksoud et al.*, 27 C. C. P. A. (Customs) 218, C. A. D. 87; *United States* v. *Astra Bentwood Furniture Co.*, 25 C. C. P. A. (Customs) 340, T. D. 49343.

There can be no question about the common meaning of the word "imitation" as defined by all the lexicographers. It is an act of imitating or copying, or that which is made or produced by imitating, or a simulated reproduction or representation of the thing sought to be copied or imitated.

Oriental rugs have had for hundreds of years past a well-defined common meaning, found in various encyclopedias, among which are The New International Encyclopaedia, 1910, XVII, pages 342 and 343, The Encyclopaedia Britannica, Eleventh Edition, 1910, V, pages 392 to 396, and The Encyclopaedia Britannica, Fourteenth Edition, 1929, XIX, pages 620 to 629. These publications describe in great detail the materials and process used in making such rugs and the designs characteristic of the different types. This long-understood common meaning is well epitomized in Webster's New International Dictionary, 1936, reading as follows:

Oriental rug *or* carpet. Any hand-woven or hand-knotted one-piece rug or carpet made in the Orient, esp. in Asia. With the exception of kilims and Sumaks, Oriental carpets and rugs have a pile produced by knotting around one or, generally, two warps of cotton or wool, one or several tufts of colored woolen or silk (or in a few instances, cotton) yarn, over each row of which a woof shot is passed. The texture, workmanship, and esp., the designs, vary with the locality in which the rugs are produced and with the mode of living and traditions of the weavers. They fall into six main groups: *Turkish, Persian, Caucasian, Turkoman, Chinese,* and (*East*) *Indian,* but are further divided and subdivided.

In the light of such a clear common meaning of "imitation oriental rugs" as appears herein, it is obvious that the involved merchandise cannot be therein included, since the goods respond to none of the characteristics of the common meaning of that term.

In the case of *Torino Trading Corporation* v. *United States*, 1 Cust. Ct. 387, Abs. 39295 (not appealed), the same issue arose over classification of rugs such as are here involved. Apparently the question of commercial designation was not before the court, and since the evidence failed to show that the rugs had designs which imitated or were typical of a real oriental rug the protests were overruled. In that case the court decided that in the common meaning an "imitation oriental rug, wholly or in chief value of cotton," should be of oriental design. Since the design is one of the chief characteristics of oriental rugs it would seem that the opinion is sound.

Viewing the testimony of appellant's witnesses who stated that there was no difference between the common meaning of the word "imitation" and the trade designation of the rugs, together with their further testimony that the merchandise was uniformly, definitely, and generally bought and sold and known in the wholesale trade throughout the United States as "imitation orientals," "cotton imitation oriental rugs," and "imitation cotton orientals," it is clear to us that the witnesses either misunderstood the questions or were confused in that they could not separate their knowledge as floor-covering dealers from what would ordinarily be understood as the common meaning. Since it is so clear that the involved merchandise cannot possibly be included within the common meaning of "imitation oriental rugs, wholly or in chief value of cotton," we must hold as a matter of law, regardless of what the witnesses may have testified as to the common meaning being the same as that of the trade designation, that the rugs here in issue do not respond thereto.

Appellee contends that appellant has failed to sustain its burden in that no witness testified that the commercial meaning or trade designation was in the precise words of the trade agreement.

There can be no doubt that proof of commercial designation must be made in the terms of the statute. *Neuman & Schwiers Co., Inc.* v. *United States*, 24 C. C. P. A. (Customs) 127, T. D. 48606; *United States* v. *Hoyt, Shepston & Sciaroni et al.*, 16 Ct. Cust. Appls. 502, T. D. 43236; *United States* v. *Wilfred Schade & Co.*, 16 Ct. Cust. Appls. 366, T. D. 43092. The same must apply to amendments to the statute made by trade agreements. We would be going very far indeed if we were to hold that the witnesses here, instead of using the words "imitation oriental rugs, wholly or in chief value of cotton," did not describe the merchandise sufficiently by the use of the words "imitation orientals," "imitation cotton orientals," and "cotton imitation oriental rugs." It could hardly be expected that men of com-

merce could be so well-versed in the phraseology of the statute as the Government insists. All of the testimony here was with reference to cotton rugs. Nobody questions the fact that these rugs are made of cotton. Since they are so made, of course they must be wholly or in chief value of that material. We therefore hold that the testimony of appellant's witnesses is fully in accord with the principles laid down by this court. In our opinion appellant established a *prima facie* case at the trial.

Appellee agrees that the common meaning of words in customs jurisprudence is a question of law and that evidence addressed to that point is not binding on the court, but contends that part of the burden necessary to establish commercial designation is evidence that such trade meaning differs from the common understanding, citing the cases of *United States* v. *Briggs Manufacturing Co.*, 14 Ct. Cust. Appls. 1, T. D. 41526, and *Passaic Worsted Co. et al.* v. *United States*, 17 C. C. P. A. (Customs) 459, T. D. 43916. We agree with this contention. The record here in our opinion follows the principle laid down in those cases that the commercial designation differs from the common understanding of "imitation oriental rugs, wholly or in chief value of cotton." As stated in the *Briggs Manufacturing Co.* case, *supra:*

> For many years it has been the well understood rule of legal construction in customs cases that the common and commercial meanings of a word or term used in a customs law are presumed to be the same unless it is otherwise shown, and that upon him who claims a different commercial meaning devolves the burden of making good his contention. To do that, it is incumbent to show that the given word or term has a definite, uniform, and general meaning among those who are wholesale dealers therein which is different from its ordinary meaning. *United States* v. *Walter*, 4. Ct. Cust. Appls. 95; *Maddock* v. *Magone*, 152 U. S. 368.

In none of the cases involving commercial designation have we been able to find a holding that it is necessary for a witness to state in so many words that commercial designation differs from common meaning. All that it is necessary to show is that the proof of commercial meaning is sufficient to take the involved goods out of the common meaning of the term used in the statute.

In the *Passaic Worsted* case, *supra*, several former cases of this court on the question of commercial designation were cited with approval; and the decision in that case merely reiterated the principles laid down in those cases. In that case it is said that before attempting to establish commercial designation "it must be legally admitted that they [textile machinery] have a commercial designation which differs from their common designation and that, under the common designation, they are not textile machinery." In the instant case it was clearly shown by appellant that the rugs have a commercial designation which differs from the common designation, and that under the common designation they are not "imitation oriental rugs, wholly or in chief value of cotton." Furthermore, it was admitted from the beginning by

appellant that the common designation differed from the commercial designation, which of course must mean that the commercial designation of the goods differed from the common designation. Since appellant proved that the imported merchandise was bought and sold at wholesale and was uniformly, definitely, and generally known as "imitation oriental rugs, wholly or in chief value of cotton," his case conformed to the principles laid down in the *Passaic Worsted* case, *supra*, as well as the other cases concerning commercial designation.

Since the trial court did not weigh all of the testimony in this case and decide the issue on preponderance of the evidence, *Walter Johnson v. United States*, 21 C. C. P. A. (Customs) 129, T. D. 46464; *Sunde & D'Evers Co. et al. v. United States*, 17 C. C. P. A. (Customs) 24, T. D. 43321; *French Kreme Co. et al. v. United States*, 18 C. C. P. A. (Customs) 301, T. D. 44505, it is necessary to *reverse* the judgment and *remand* the case for further proceedings consistent with what has been set forth herein.

HATFIELD, Judge, dissenting:

I am constrained to disagree with the conclusion reached by the majority of the court. I am in entire accord, however, with the majority opinion in all respects except one, that is, that commercial designation has been established *prima facie*, and, even, as to that issue, I agree that it was unnecessary for appellant to establish, as argued by counsel for the Government, that the articles in question were generally, definitely, and uniformly known in the trade as "imitation oriental rugs, *wholly or in chief value of cotton.*" [Italics mine.]

In other words, I agree that commercial designation could have been established by proving that the articles in question were generally, definitely, and uniformly known in the trade throughout the United States as "imitation oriental rugs."

It is correctly pointed out in the majority opinion that the articles in question are not within the common meaning of the term "imitation oriental rugs," and that, in order to establish commercial designation, it was necessary for appellant to prove that the rugs in question were generally, definitely, and uniformly designated in the trade by the tariff term, that is "imitation oriental rugs."

Witnesses for appellant testified, as related in the majority opinion, that the rugs in question were designated in the trade as "imitation orientals," "cotton imitation oriental rugs," and "imitation cotton orientals." But one of the witnesses testified that the rugs were designated in the trade and commerce of the United States as "imitation oriental rugs," and he also testified that they were generally, definitely, and uniformly designated in the trade by him as "imitation oriental cotton rugs."

So, it appears from the record and from the majority opinion that the involved rugs were bought and sold in the trade and commerce

of the United States under at least three different designations, that is, "imitation orientals," "cotton imitation oriental rugs," and "imitation cotton orientals." That being so, it seems to me that it has not been established *prima facie* that the rugs in question were generally, definitely, and uniformly designated in the trade by the language of the statute in conformity with the rule stated in the majority opinion, which rule is supported by cases cited in the opinion. Accordingly, I concur in the views expressed by the trial court, and, in my opinion, its judgment should be affirmed.