(C. D. 808)

G. J. KLUYSKENS ET AL. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 15, 1943)

*Tompkins & Tompkins* (*J. Stuart Tompkins* and *Allerton deC. Tompkins* of counsel) for the plaintiffs.

*Paul P. Rao*, Assistant Attorney General (*Joseph E. Weil* and *Richard E. FitzGibbon*, special attorneys), for the defendant.

Before TILSON and KINCHELOE, Judges; TILSON, J., concurring; LAWRENCE, J., not participating

KINCHELOE, Judge:  This is a suit for the recovery of certain customs duty alleged to have been improperly imposed on imported

merchandise. The merchandise was assessed for duty by the collector at 40 per centum ad valorem under the provision of paragraph 1021 of the Tariff Act of 1930, for "all other floor coverings not specially provided for," and is claimed dutiable at 35 per centum ad valorem under the provision of the same paragraph, which so far as pertinent, reads as follows:

PAR. 1021. * * *; carpets, carpeting, mats, matting, and rugs, wholly or in chief value of flax, hemp, or jute, or a mixture thereof, 35 per centum ad valorem; all other floor coverings not specially provided for, 40 per centum ad valorem.

The contention of the plaintiffs is in effect that as said paragraph 1021 provides for rugs and mats in chief value of hemp, without qualification, and as the rugs in question are in chief value of what is commonly known as sisal hemp, they are dutiable under said paragraph as hemp rugs.

Other claims are made by plaintiffs which, however, clearly have no application. Protest 912931–G has been abandoned insofar as it relates to entry 3934, and protest 960866–G has been abandoned insofar as it relates to entry 4541.

A representative sample of the rugs in question has been marked in evidence as exhibit 1, which, according to the analysis thereof made by the chemist in the United States Customs Laboratory at New York, is composed of approximately 95 per centum of sisal yarn and 5 per centum of manila yarn (exhibit 3).

At the request of the plaintiffs a commission was issued herein to take the deposition of one R. A. Van Der Sluis, managing director of N. V. Lankhorst Touwfabrieken, Holland, the manufacturers of the yarns from which the rugs and mats here in question were made. Said deposition has since been returned, together with a translation of the answers from Dutch into English, which were both marked in evidence as collective exhibit 2, subject, however, to two motions by counsel for the Government to strike out the answers to inter-rogoratories 8 and 20, respectively, on the ground that deponent was not qualified to answer, and on the further ground of being hearsay.

The purport of said deposition was simply to show that N. V. Lankhorst Touwfabrieken were the manufacturers of the yarn that was sold to and used by Koninklijke Vereenigde Tapijtfabrieken N. V. in the manufacture of the sisal rugs and mats under consideration; that such yarns were made from Netherlands East Indian and East African sisal hemp, and that said materials were described in contracts and invoices as "sisal hemp" and H. V. A. sisal.

In view of the uncontradicted nature of the testimony herein, and our conclusion in the matter, the objections raised by the Government counsel are really not very important. We have, however, decided to deny said motions, with exceptions to the defendant.

Plaintiff Gerard John Kluyskens testified that he is the importer of the merchandise under consideration; that he is familiar with all the sisal rugs or mats covered by the invoices; that the merchandise invoiced as sisal rugs or sisal mats is identical as to the material, which is sisal, except that there are different colors and designs, and different sizes, but that the material, quality, and texture are approximately the same in each instance.

The term "hemp" is defined by various lexicographical authorities, as follows:

### The International Encyclopaedia:

*hemp* * * *. While strictly speaking, the name "hemp" belongs to the plant *Cannabis sativa*, by common usage it is now applied to other fibre plants that in a great measure supply the uses once filled by the common hemp alone. These are designated as bowstring, manila, sisal, and sunn hemp.

### Webster's New International Dictionary:

*hemp* 4. The useful fiber of any of numerous other plants * * *; often with qualifying or descriptive word, as sisal *hemp*.

### Century Dictionary:

*hemp* * * * 3. One of various plants of other genera yielding similar fibers, distinguished by specific epithets—African hemp. * * * *Indian* hemp. * * * *, Manila hemp. * * *, Sisal hemp, the fiber of species of *Agave*, * * *.

### Encyclopaedia Britannica:

*hemp*, * * * the products from many totally different plants are often included under the general name of hemp. In some cases the fibre is obtained from the stem, while in others it comes from the leaf.

The term "sisal" is defined in Webster's New International Dictionary, as follows:

*sisal n.* Also sisal hemp. *a.* A strong durable white fiber three to five feet long, derived from the leaves of a West Indian agave (*Agave sisalina*) and used for hard fiber cordage, esp. lariats, and to some extent for binder twine. Also, the plant yielding this fiber, grown in Java, East Africa, Bahamas, and Mexico. *b.* A similar fiber derived from any of several related plants, as the henequen and *A. decipiens*, the source of *false sisal*.

At the trial of this case counsel for the plaintiffs made the following statement:

Briefly stated, the issue in this case is whether or not the term "hemp," in the provision under paragraph 1021 should be applied in its broad or its narrow sense. We claim that the word "hemp" in paragraph 1021 should be used and interpreted in its broad meaning to include all kinds of true and commercial hemps, such as manila hemp, sisal hemp, and other articles that are not really true hemps, and in that way we claim that the sisal rugs, or these sisal rugs, should take the lower 35 per cent duty.

We quite agree with the correctness of the foregoing statement, which is simply another way of saying that the question for our deter-

mination is one of law as to whether Congress intended to use the term "hemp" in said paragraph 1021 in its broad or narrow sense. Under the circumstances we do not consider it necessary to go into any lengthy discussion of the testimony, which, on the whole, is not contradicted, and which is to the effect that sisal and sisal hemp in the trade are one and the same thing regardless of where they come from; that in the broad sense they are known in the trade as one of the hemps, and that it was the general practice to designate sisal and sisal products under the general head of hemps (R. 16/17); that sisal is distinguished from true hemp in that sisal comes from the leaf of a plant called *agave*, while true hemp comes from the stem of a shrub botanically called *Cannabis sativa;* that sisal is a perennial plant, which means something that is planted and continues to bear for a number of years, while true hemp is an annual plant, which means that the material has to be planted every year, such as flax, hemp, and jute; that sisal is a hard fiber, and true hemp a soft fiber; that when the word "hemp" is used alone it has reference to true hemp, which includes the Russian, Italian, and American hemp, while if the word "hemp" is used in connection with hard fiber it would be qualified by other words or names, such as manila hemp, sisal hemp, etc. It is shown further, however, that all hemp, true or otherwise, comes under the general classification of hemp (R. 39), and the various catalogs and publications introduced in evidence would seem to confirm the testimony.

From the foregoing it will be seen that in the broad sense sisal, commonly and commercially, is known as one of the many varieties of hemp, but that in the narrow sense it would not be so known. The only question therefore is in what sense Congress used the term "hemp" in said paragraph 1021 of said act of 1930.

In this connection we may state that when Congress was preparing the Tariff Act of 1930 it had before it the Summary of Tariff Information, 1929, on the Tariff Act of 1922, compiled by the United States Tariff Commission. In vol. 2 of that summary, at pages 1617–8, under the heading "Hemp," is found the following:

*Description and uses.*—There are some 30 fibers to which the term "hemp" is loosely applied, but paragraph 1001 of the Tariff Act of 1922 relates only to true hemp, or *Cannabis sativa.* Hemp is coarser, less elastic, less flexible, and more difficult to bleach than flax. Like flax, however, it is stronger, glossier, more durable, and also more costly to manufacture than fibers which are offered as substitutes for it. Both hemp and flax are "soft" fibers, obtained from the bast (inner bark) which surrounds the boon (woody core) of the stem or stalk.

Although used mainly as a cordage material, hemp is also used to some extent for seine twine, standing rigging, heaving lines for ships, carpet warp, sails, tarpaulin, hall rugs, aisle runners, upholstery and belt webbing, and to a less extent for coarse and medium crash goods.

Hemp fiber is prepared for spinning in virtually the same manner as flax. Thus, hackled hemp denominates the fiber which, after the natural retentive gums have been broken down by fermentation (retting), has been extracted from the

stalk by scutching (breaking) and beating away the woody portion, and drawn by hand or machine, or both, through beds of steel pins to remove short fibers and impurities and to make parallel those remaining. It is then ready for the drawing, roving, and spinning process. Hemp only roughly hand-hackled by the use of a coarse hackle is known in the American market as "single dressed hemp," while that subjected to hackling with finer and sharper needles, set close together, is known as "double dressed hemp."

Hemp tow is the short, more or less tangled fiber removed by hackling. A part of this tow may be spun after carding; the remainder is used largely for oakum for packing pumps and engines, and as upholstery stuffing.

And, at page 1630, is found the following, under the heading "Cordage":

\*    \*    \*    \*    \*    \*    \*

Manila, often called manila hemp, is the world's foremost cordage fiber. Its great pliability and strength particularly adapt it for hawsers, ships' cables, hoisting ropes, and transmission ropes. The production of manila is practically a monopoly of the Philippine Islands. Sisal, like manila, a hard fiber, and jute, a soft fiber, are largely used in the cheaper grades of cordage; istle (sometimes called Tampico fiber) and sunn are used to a smaller extent. Hemp (*Cannabis sativa*) is also used in cables and cordage. Much cordage is tarred. The yarns of tarred rope are passed through a tank of tar heated to 220° F.; this renders the rope measurably impervious to water and enables it to resist the ravages of weather. Russian hemp has long been held superior for tarred rigging.

And at page 1665, under the heading, "Floor Coverings of Flax, Hemp, or Jute," is found the following:

*Description and uses.*—Flax and hemp are employed only to a limited extent as the component materials of chief value in floor coverings. Yarns of both flax and hemp are used, though rarely, as warp in the manufacture of wool floor coverings. The chief use of jute in the floor-covering industry is as warp in wool carpets and rugs. Over 67,000,000 pounds of jute yarn were so used in 1927.

And at page 2344, under the heading, "Sisal," is found the following:

*Description and uses.*—Sisal, sometimes called "sisal grass" and "sisal hemp" and often used in reference to henequen, is a leaf, or hard fiber. It differs from henequen in that it is softer, less woody in texture, and lighter in color—characteristics which may be partly due to more thorough preparation. The yield of sisal is about twice that of henequen, the latter being a much slower-growing plant.

Sisal fiber is used in the manufacture of cordage and, because of certain properties of stiffness, is preferred for lariats. It is used to a certain extent in the manufacture of binding twine, either alone or mixed with other fibers such as henequen, manila, New Zealand flax, and others.

*Production.*—Sisal is grown principally in East Africa, Java, the Bahamas, and the Philippines, but data as to quantities or values of production are not available.

If the said report of the Tariff Commission is to be accepted as any guide, we think it clearly shows that in the tariff sense the term "hemp" as used in said paragraph 1021 was undoubtedly used in the narrow sense, which would restrict it to true or botanical hemp.

True hemp was distinguished from other fibers in the case of *F. H. Shallus*, G. A. 5511 (T. D. 24845), wherein New Zealand hemp was held free of duty under paragraph 566 of the Tariff Act of 1897, which provided, among other things, for fibers of manila, sisal grass, sunn, and all other textile grasses or fibrous substances, etc., and not dutiable under paragraph 327 of that act, which read: "Hemp, and tow of hemp."

Again, in the case of *W. N. Proctor Co.*, G. A. 8316 (T. D. 38252), true hemp was distinguished from manila hemp or manila fiber. The merchandise consisted of fish nets composed of so-called manila hemp. The nets were held not to be made of true hemp in the tariff sense, and were therefore held not dutiable under paragraph 271 of the Tariff Act of 1913, as nets of hemp, but dutiable under paragraph 284 as manufactures of vegetable fiber not specially provided for. We quote from the opinion in that case, as follows:

That a provision in a tariff act covering a certain article by a name can not be made to cover articles which are really something different simply because they are commercially or commonly called by a term which includes the statutory word, with an added qualifying word or phrase, is readily seen from the following decisions: *United States* v. *Neuman & Schwiers Co.* (6 Ct. Cust. Appls. 228; T. D. 35467), holding that "ginger bread" is not "bread"; *Waddell* v. *United States.* (5 Ct. Cust. Appls. 63; T. D. 34098), holding that "scouring bricks" and "bath bricks" are not "bricks"; *United States* v. *Walter* (4 Ct. Cust. Appls. 95; T. D. 33371), holding "ladder tapes" are not "tapes"; *McEnany* v. *United States* (8 Ct. Cust. Appls. 329; T. D. 37598), holding "acetone oil" is not "oil." There are numerous other cases along the same line which it is not neccessary to mention.

Another case to the same effect is that of the *State Cordage Co.*, G. A. 8483 (T. D. 38915), wherein certain twine invoiced as "sunn hemp" and "Bombay hemp" was found not to be made of true hemp, and was held dutiable under paragraph 284 of the Tariff Act of 1913, as manufactures of vegetable fiber not specially provided for, as assessed, and not under paragraph 269 as twines composed of hemp, as claimed.

In the present case the sisal or sisal hemp of which the rugs or mats in question are made is also shown not to be made of true hemp, so that the decisions cited, *supra*, undoubtedly apply. Therefore on the authority of same, as also on the report of the United States Tariff Commission, quoted, *supra*, we are satisfied that Congress used the term "hemp" in paragraph 1021 of said act of 1930 in the narrow or botanical sense, which would exclude from said paragraph any rugs or mats not made from true hemp. It follows that all the claims of the plaintiff herein must be, and hereby are, overruled.

Judgment will be rendered accordingly.

### CONCURRING OPINION

TILSON, Judge, specially concurring: I agree with the conclusion reached by my associate upon the ground that we are here bound by

the rule of legislative approval of judicial construction. In the three cases cited by my associate it was held that the term "hemp" referred only to true hemp. There appears to have been no reversal or modification of those decisions, and there is nothing to indicate that the Congress in enacting paragraph 1021 of the act of 1930 used the term in any different sense than as interpreted in the three decisions, *supra*. In the decision of the issue here presented we are bound by those decisions, and it is, therefore, unnecessary for us to accept as a guide any report of the Tariff Commission.