(C. D. 1293)

GIMBEL BROS., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided January 19, 1951)

*John D. Rode* for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: This is a suit to recover duties alleged to have been erroneously assessed by the collector of customs at the port of New York upon an importation of fiber rugs. The merchandise was classified pursuant to the provision in paragraph 1021 of the Tariff Act of 1930 for all other floor coverings not specially provided for and, accordingly, assessed with duty at the rate of 40 per centum ad valorem. Plaintiff, in its protest, claims that the merchandise is dutiable at only 35 per centum ad valorem as rugs, wholly or in chief value of flax, which are also provided for in said paragraph.

Paragraph 1021 of the Tariff Act of 1930 reads as follows:

Common China, Japan, and India straw matting, and floor coverings made therefrom, 3 cents per square yard; carpets, carpeting, mats, matting, and rugs, wholly or in chief value of flax, hemp, or jute, or a mixture thereof, 35 per centum ad valorem; all other floor coverings not specially provided for, 40 per centum ad valorem.

Insofar as the component material of chief value of the involved rugs is concerned, the parties hereto are in agreement that it is a substance known as *phormium tenax*, or New Zealand flax, and they have so stipulated. The question before us is, therefore, whether a rug in chief value of *phormium tenax*, or New Zealand flax, is a rug in chief value of flax, within the meaning of paragraph 1021, *supra.*

Counsel for the plaintiff, while disclaiming any desire or intention of proving a commercial designation of the tariff term "flax" as it appears in paragraph 1021, *supra*, nevertheless, contends that *phormium tenax* is both commonly and commercially known as flax, and that, therefore, the imported rugs are properly dutiable as rugs in chief value of flax.

Whether or not counsel for the plaintiff employs the phrase "commercially known as flax" in the sense in which, in customs litigation, it may be construed as signifying commercial designation, the fact is that the record before us is without a scintilla of evidence which might tend to establish such commercial designation.

Instead of proving a commercial meaning of the term "flax" in the floor covering trade different from the common meaning, plaintiff proved, to the extent that there was in fact a trade meaning for the term, that both commonly and commercially the meaning was the

same. When, for example, the witness O'Brien, a rug buyer for 36 years, was asked what the term "flax" as used in the rug or floor covering trade included, he could give only the meaning which he had "looked * * * up in the dictionary." That in this witness' interpretation of the meaning of the word "flax" as found in the dictionary it included "anything made from the flax plant, whether it is New Zealand, or Holland, or Ireland," can have no probative effect here, for testimony as to the common meaning of a tariff term is advisory only. *Hummel Chemical Co.* v. *United States*, 29 C. C. P. A. (Customs) 178, C. A. D. 189.

In the case of *United States* v. *Florea & Co., Inc.*, 25 C. C. P. A. (Customs) 292, T. D. 49396, the court stated:

At this point it may be observed that in cases like the one at bar, courts may give consideration to, and often are aided by, the testimony of competent witnesses with reference to the common meaning of a term when applied to the particular merchandise under consideration. It is well settled, however, that the courts are not, under such circumstances as are at bar, bound by such testimony, but will ordinarily chiefly rely upon decisions of the courts and upon the definitions found in dictionaries and other lexicographical authorities. *F. W. Myers & Co. (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 171, T. D. 42794. The reasons for this practice are not obscure. It quite often happens that the opinions of witnesses are prompted by bias or personal interest. It also frequently occurs, as it has here, that the opinions of the witnesses of one of the parties involved are in direct conflict with those of the other party.

It has long been conclusively settled that the common meaning of a term is not an issue of fact but is a matter of law. *Marvel* v. *Merritt*, 116 U. S. 11; *United States* v. *North American Mercantile Co.*, 17 C. C. P. A. (Customs) 378, T. D. 43820.

In view of the witness' statement as to the source from which he derived his understanding of the meaning of the word "flax," we find his testimony neither particularly helpful nor enlightening. The same authorities are available to the court as were available to him. Resort to Webster's New International Dictionary, 1945, 2d Edition, reveals the following:

**flax,** *n.* **1.** A plant of the genus *Linum*, esp. *L. usitatissimum*, the species commonly cultivated for its fiber. It is a slender erect annual, with linear leaves and blue flowers. The long silky bast fiber, freed from the stem by rotting or "retting" and various mechanical processes, is used in the manufacture of linen thread and twine, crash, and floor covering, esp. in the warp of wool carpets and rugs. See LINEN. The seed is also of great commercial importance. See FLAXSEED.

**2.** The cleaned fiber of the flax plant, prepared for spinning.

**3.** Any one of several plants resembling flax;—usually with descriptive or qualifying adjective; as toad*flax*, white *flax*, etc.

In Funk & Wagnalls New Standard Dictionary of the English Language, flax is stated to be:

*n.* **1.** The soft silky fiber obtained from the bark of the flax-plant. **2.** An annual plant (*Linum usitatissimum*), of the family *Linaceae*, with stems about 2

feet high, having linear-lanceolate leaves, blue flowers, mucilaginous seed, called *flaxseed* or *linseed*, and a bast which yields the flax of commerce. **3.** Any plant of the genus *Linum*. **4.** Any one of several plants of other genera, mostly resembling flax, as the white flax or false flax, toadflax, and New Zealand flax or flax-bush.

In the New Century Dictionary, we find:

**flax,** *n.* Any plant of the genus *Linum*, esp. *L. usitatissimum*, a slender, erect annual plant with narrow lance-shaped leaves and blue flowers, much cultivated for its fiber and seeds; the fiber of this plant, used in the manufacture of linen thread and fabrics; also any of various plants resembling flax.—**flax-bush** *n.* A liliaceous plant, *Phormium tenax* of New Zealand, with erect sword-shaped leaves which yield a strong fiber.

It thus appears that flax is primarily the plant, known botanically as *Linum usitatissimum*, and the fiber derived from the stem of that plant. It is, however, because these definitions mention under the heading of "flax" certain plants of other genera than the genus *Linum* which *resemble* flax that counsel for the plaintiff asserts that commonly the word, flax, includes the fibers of *phormium tenax* or New Zealand flax. In our interpretation of the foregoing definitions, counsel's position is not tenable.

The verb "resemble" is defined as follows (Funk & Wagnalls New Standard Dictionary):

**1.** To be similar to in appearance, quality, or operation; be of the same or like nature or aspect with; * * *.

To say that a thing is like or similar to another is not equivalent to saying that the two are synonymous or identical, or that one is within the common meaning of the other. In our opinion, the so-called flax plants which are not of the genus *Linum* are included within the definitions of flax solely because they are commonly called by names in which the word flax appears. We think, however, that neither commonly nor commercially would these fibers be referred to as flax, without the addition of the pertinent modifier, as for example, *white* flax, or *toad*flax, or *New Zealand* flax. The use of the composite name is not intended to denote that the plant so designated is a species or genus of flax.

In this connection, the definition of phormium or New Zealand flax in the Encyclopaedia Britannica, 1947 Edition, Vol. 17, is enlightening. It is there stated:

**Phormium** or **New Zealand Flax** (also termed New Zealand hemp). The plant (*Phormium tenax*) is a perennial of the Liliaceae family and is propagated either by rhizomes or by seed. While termed "New Zealand flax" and also "New Zealand hemp," the plant has no relationship to either flax (*Linum usitatissimum*) or hemp (*Cannabis sative*). Phormium is a native of New Zealand and, while known to be adapted in many other countries, is not commonly grown for commercial fibre production in any country other than New Zealand.

The Summary of Tariff Information, 1929, on the Tariff Act of 1922, compiled by the United States Tariff Commission, which Congress had before it when the Tariff Act of 1930 was being drafted, also provides support for the position which we have here taken, namely, that New Zealand flax is not within the common meaning of flax. Under a discussion of paragraph 1582 of the Tariff Act of 1922, which paragraph provided for—

Grasses and fibers: Istle or Tampico fiber, jute, jute butts, manila, sisal, henequen, sunn, and all other textile grasses or fibrous vegetable substances, not dressed or manufactured in any manner, and not specially provided for.

there is stated at page 2342:

Paragraph 1582 of the free list covers vegetable fibers, other than cotton, not elsewhere specially provided for. Vegetable fibers not falling within this classification are flax, hemp, and crin vegetal, dutiable under paragraph 1001, together with coir (par. 1554) and pulu (par. 1648), both of which are free of duty.

The principal fibers imported under paragraph 1582 are henequen and sisal, long jute, and manila, followed by istle, jute butts, kapok, and *New Zealand fiber*. [Italics supplied.]

and at page 2348:

### NEW ZEALAND FLAX

**Description and uses.**—This fiber is obtained from the leaves of a swamp lily (*Phormium tenax*) native to New Zealand. It is also cultivated on a small scale in Australasia and in some European countries. The fiber is white, soft, lustrous, and tougher than either flax or hemp, but resists water poorly. It is used principally in cordage, twine, and to a small extent for floor matting, although the best fiber can be woven into a cloth resembling linen duck. When employed in binder twine, baling rope, and cordage it is usually mixed with sisal or manila.

Whereas, an entirely independent discussion of true flax may be found in this volume at page 1615, following the quotation of the provisions of paragraph 1001 of the Tariff Act of 1922. It is there stated:

### FLAX

**Description and uses.**—Flax is the oldest of all vegetable fibers recorded as being applied to the use of mankind * * * A demand for flax persists because of its inherent beauty, strength, and durability, which enable it to survive repeated handling and washing with less loss of its sheen and hard surface and without napping. Flax is used for thread, fish lines, fish nets, water hose, towels, table and bed linen, handkerchiefs, and dress goods.

Flax straw is the dried stem of the flax plant before the extraction of the fiber. Flax, not hackled, is the fiber that has been taken from the straw by retting (rotting away the retentive gum) and scutching (knocking out the woody core from the surrounding fibers), but which has undergone no further treatment. Hackled flax consists of the longer fibers after the more or less complete combing out of the shorter fibers by hand or machine hackling operations. Flax that has been completely hackled is known as dressed line and is used in making thread and fabrics of the higher grades. Flax tow for spinning consists of the shorter and less valuable fibers discarded in the hackling operations and corresponds to the noil of a

worsted mill.   The coarse and medium counts produced from such tow form a very important part of the world's output of flax yarns and are extensively used in the manufacture of paddings, crashes, and canvas.   *   *   *

It is particularly interesting to note from the foregoing that flax is a fiber derived from the *stem* of the plant, while *phormium tenax* or New Zealand flax is a fiber obtained from the leaves of a totally different species of plant.

Assuredly, therefore, a distinction was drawn for Congress between true flax and New Zealand flax of which Congress has taken cognizance by providing in paragraph 1684 of the present act that New Zealand fiber shall be free of duty, whereas flax is listed in paragraph 1001 as a dutiable item.   There is no sound reason for assuming, in the absence of a showing of a contrary commercial designation, that Congress intended the word "flax" in said paragraph 1021 to include New Zealand fiber while separately providing for flax and New Zealand fiber in paragraphs 1001 and 1684, respectively.

In the case of *F. H. Shallus* v. *United States*, 6 Treas. Dec. 1023, T. D. 24845, it was held that New Zealand hemp, which in view of the foregoing, would appear to be synonymous with New Zealand flax, was not hemp, but was in fact a crude unmanufactured textile grass or fibrous vegetable substance.   It is significant that the court was not there impelled to a contrary finding merely because the word "hemp" appeared as a part of the name of the product before it.

Nor is the case of *Bailey et al.* v. *Cadwalader*, 43 Fed. 294, cited by plaintiff, authority for a conclusion contrary to the one we have here reached.   There, the merchandise, the classification of which was at issue, was described as East India Bombay hemp.   In holding that the merchandise was hemp, and not a vegetable substance, not specially provided for, the court found that it had been established that the fiber was bought, sold, and used in trade under the commercial designation of hemp.   The commercial meaning, of course, was held to control.

While it is by no means decisive of the issue here involved, we think that the case of *G. J. Kluyskens et al.* v. *United States*, 11 Cust. Ct. 122, C. D. 808, has an important bearing on it.   There, the court was concerned with the proper classification of certain rugs in chief value of sisal hemp, which similarly to the instant merchandise had been classified as all other floor coverings not specially provided for, pursuant to the provisions of paragraph 1021, *supra,* and were claimed to be dutiable under the provision in said paragraph 1021 for carpets, etc., wholly or in chief value of hemp.   The court held that, while, in the broad sense, sisal is commonly and commercially known as hemp, in the strict sense, it would not be so known, and that Congress, in using the term "hemp" in said paragraph 1021, used it in that narrow sense which would restrict it to true or botanical hemp.

It is both reasonable and logical to assume, if Congress used the term hemp in paragraph 1021, *supra*, in its narrow sense, that when it employed the word "flax" in the same provision it intended only true flax, as distinct from any product or substance resembling it. Accordingly, any carpet, rug, or mat which is not in chief value of true flax is excluded from the scope of the provision. As the instant rugs are in chief value of *phormium tenax*, a substance which is not true flax, they are not in chief value of flax, and were properly classified as all other floor coverings not specially provided for. All claims in the protest are therefore overruled. Judgment will be entered accordingly.