GIMBEL BROS., INC. *v.* UNITED STATES (No. 4671)[1]

---

[1] C. A. D. 483.

United States Court of Customs and Patent Appeals, March 18, 1952

*John D. Rode* for appellant.

*Charles J. Wagner*, Acting Assistant Attorney General (*Joseph F. Donohue*, special attorney, of counsel), for the United States.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges

GARRETT, Chief Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, entered in conformity with its decision, C. D. 1293, 26 Cust. Ct. 31, overruling the protest of importer, whereby it sought recovery of an alleged excess of duty assessed upon certain rugs, or floor coverings, by the Collector of Customs at the port of New York City.

Paragraph 1021 of the Tariff Act of 1930 is involved. It reads:

Par. 1021. Common China, Japan, and India straw matting, and floor coverings made therefrom, 3 cents per square yard; carpets, carpeting, mats, matting, and rugs, wholly or in chief value of flax, hemp, or jute, or a mixture thereof, 35 per centum ad valorem; all other floor coverings not specially provided for, 40 per centum ad valorem.

In the "Memorandum of the Collector" accompanying the appeal to the Customs Court, it is said that the merchandise was "classified as all other floor coverings, N. S. P. F. at 40% under paragraph 1021 of the Tariff Act of 1930."

The protest of importer, after referring to the assessment as being "on certain carpets, mats, rugs or other floor coverings," alleged:

Said merchandise is not dutiable as assessed. It is composed wholly or in chief value of flax, hemp or jute or a mixture thereof and is accordingly dutiable at only 35% under Par. 1021.

During the preliminary statement of counsel for appellant at the trial before the Customs Court, he first referred to the merchandise simply as rugs, and then he was asked certain questions as to whether

the articles were conceded to be rugs. The inquiries finally led counsel to say:

Mr. Rode: We are claiming, if I may withdraw my previous statement, which I did not intend to limit to the question of rugs—we claim that these articles are properly dutiable under the provision for "carpets, carpeting, mats, matting, and rugs, wholly or in chief value of flax." The only issue in the case is whether or not phormium tenax is flax within the meaning of the terms of the Tariff Act.

The sample of the merchandise in evidence as Exhibit 1 is a rug and before us the merchandise is referred to specifically as rugs, which, of course, are included in the broad designation of floor coverings. There is no reference to it as "carpets, carpeting, mats or mattings." Accordingly, we follow the trial court in referring to the merchandise as rugs.

There is no dispute with respect to the component material of chief value in the merchandise. It consists of fibers obtained from the leaves of the phormium plant. A witness for appellant, who stated that he had been engaged in buying floor covering—"Most everything that is made, from Constantinople to Yonkers, New York"—for 36 years, testified that he personally purchased the involved merchandise in Belgium. It is deduced from his testimony that it was manufactured from an order which he gave; that in the order he "stipulated it would be jute 30 per cent, phormium tenax 60 per cent, and sisal 10 per cent"; and that the sample rug introduced in evidence as appellant's Exhibit 1 approximated his specification.

So, in the brief for appellant it is said that the question presented is:

Whether a rug in chief value of Phormium Tenax is a rug in chief value of flax within the meaning of that term [flax] as used in Paragraph 1021.

Paragraph 1021 of the Tariff Act of 1930, *supra*, so far as here pertinent, is the same as paragraph 1022 of the Tariff Act of 1922.

An edition of Webster's New International Dictionary, issued in 1922, states that the Anglicized word "Phormium" is derived from a Greek word meaning "a plaited mat, a kind of plant," and defines "Phormium" botanically as "A genus of liliaceous plants comprising two species. *P. tenax* is the New Zealand flax."

Definitions of flax are given in the 1922 Edition of Webster's New International Dictionary and repeated in substance in all subsequent editions as follows:

1. A plant of the genus *Linum* esp. *L. usitatissimum* the species commonly cultivated for its fiber. It is a slender erect annual, with linear leaves and blue flowers. The long silky bast fiber, freed from the stem by rotting or "retting" and various mechanical processes is used in the manufacture of linen thread, which is woven into linen cloth, as cambric, lawn, etc. [A 1949 Edition of Webster's New International Dictionary states that flax "is used in the manufacture of linen thread and twine, crash and *floor covering*, esp. in the warp of wool carpets and *rugs*. (Italics supplied.)]

2. The cleansed fiber of the flax plant prepared for spinning.

3. Any one of several plants resembling flax;—usually with descriptive or qualifying adjective as toad *flax*, white *flax*, etc. (Italics quoted.)

Funk & Wagnalls New Standard Dictionary of the English Language defines flax as

*n.* 1. The soft silky fiber obtained from the bark of the flax-plant. 2. An annual plant (*Linum usitatissimum*), of the family *Linaceae*, with stems about 2 feet high, having linear-lanceolate leaves, blue flowers, mucilaginous seed, called *flaxseed* or *linseed*, and a bast which yields the flax of commerce. 3. Any plant of the genus *Linum*. 4. Any one of several plants of other genera, mostly resembling flax, as the white flax or false flax, toadflax, and New Zealand flax or flax-bush. (Italics quoted.)

Of "flax-bush" that authority states:

The New Zealand flax (*Phormium tenax*), a stemless, sword-leaved plant of the lily family, the leaves of which yield a strong fiber useful for making ropes, mats, etc. (Italics quoted.)

It also defines "Phormium" botanically as follows:

A small genus of New Zealand plants of the family Liliaceous having a short stem bearing a dense tuft of rigid, 2-ranked sword-shaped leaves. The best known is *P. tenax*, the New Zealand flax-lily. (Italics quoted.)

The following is taken from Volume IV, page 303, of Oxford's New English Dictionary on Historical Principles, 1901 Edition:

1. The plant *Linum usitatissimum* bearing blue flowers which are succeeded by pods containing the seeds commonly known as linseed. It is cultivated for its textile fibre and for its seeds. * * *
2. With qualifying word prefixed, in the names of other species of *Linum* or of plants resembling the true flax, as *dwarf–, fairy–, mountain–, purging, spurge–, toad–, wild flax*; * * *.

\* \* \* \* \* \* \*

b. New Zealand Flax, *Phormium tenax* (also called *flax-bush, -lily, -plant*), a native of New Zealand, the leaves of which yield a textile fibre.

\* \* \* \* \* \* \*

5. A material resembling the fibres of the flax-plant or used for a like purpose. (Italics quoted.)

The above quoted definitions are the same in substance as those given by other lexicographers which need not be quoted. It is noted that flax fibers of the *L. usitatissimum* species are sometimes referred to as "true flax" and the fibers from plants of other genera, "mostly resembling flax," are referred to as "false flax."

It also is noted that the record discloses that true flax threads come from, or are, the fibers of the stems or stalks of the true flax plant, while New Zealand flax threads come from, or are, the fibers of the leaves of the phormium plant.

The definitions of "flax," however, cover both true flax and false flax and because of this a situation exists which is discussed in the brief on behalf of the Government as follows:

It will be seen from the above dictionary definitions that the noun *flax* in each

instance is limited, in the first definition, to any plant in the genus *Linum* and, if this definition were accepted, *phormium tenax* would be excluded. Each of the dictionaries, however, gives another meaning which applies to plants that are not of the genus *Linum* but that *resemble* flax. This secondary definition would include phormium tenax. [Italics quoted.]

It is not uncommon for a word to have a variety of meanings. The essence of this variety is that each definition has a different connotation. It is therefore a matter of fact, in the case at bar, the word "flax" has two different dictionary definitions. The question of law to be decided is whether either or neither of these definitions may be reliably employed in interpreting paragraph 1021. Both definitions cannot be given effect, for if that course were followed this controversy could not be decided. The Court is not at all controlled by the fact that one of the definitions may have wider acceptance than the other. It is not required to follow either. It is required however, to interpret the statute in such manner as to give expression to the legislative intent. *United States* v. *Clay Adams, Inc.* (1932) 20 C. C. P. A. (Customs) 285, T. D. 46078, and cases cited therein.

In the course of its decision of the case, the trial court stated:

* * * It is, however, because these definitions mention under the heading of "flax" certain plants of other genera than the genus *Linum* which resembles flax that counsel for the plaintiff asserts that commonly the word, flax, includes the fibers of *phormium tenax* or New Zealand flax. In our interpretation of the foregoing definitions, counsel's position is not tenable. (Italics quoted.)

The court then stated its reasons for holding that New Zealand flax could not be classified as flax for tariff purposes merely because of a resemblance, and in this connection resorted to certain legislative history as supporting its position.

The matter of *resemblance* was not stressed before us. No question of similitude was suggested, nor was it suggested that there was any proof of a commercial designation respecting New Zealand flax which differed from the common meaning of the term. Upon the contrary, it was said that the commercial meaning and the common meaning are the same.

Two witnesses were called and examined on behalf of appellant. Both had had long experience in purchasing goods of the kind described in paragraph 1021, *supra*, in both the United States and foreign countries. They undoubtedly were well informed upon the subject matter.

Near the close of taking testimony the following inquiry was made of counsel for importer by Lawrence, J.:

Upon what theory do you claim that you have established that these rugs are rugs in chief value of flax?

To which counsel responded:

I have shown by the testimony of two well-qualified witnesses that the commercial meaning of the term "flax" in the rug trade includes phormium tenax flax just as well as the so-called true flax or linum usitatissimum. I have proved that the common meaning of the term "flax includes not only the fibers of the linum usitatissimum, but also as all of the dictionary definitions say, the fibers from several other plants, such as New Zealand flax.

The same thought, with some elaboration, constitutes the argument on appellant's behalf before us.

It is evident that the trial court regarded paragraph 1021, *supra*, as ambiguous, under the factual situation here shown, and hence resort was had to legislative history as an aid in its interpretation. We think that course was proper and necessary.

It may be said with respect to administrative practice that the Government analyst who tested the merchandise here involved was called as a witness on behalf of the Government. He gave his testimony before the three judges composing the Second Division of the Customs Court on November 16, 1949. He testified that he had been an analyst for the Government for 29 years, it being his duty "To analyze fabrics, fibers; test them"; that he had been familiar with flax for 30 years but had never seen it growing in the field; that in the report (Exhibit 2) signed by him the phormium content of Exhibit 1 (the sample rug) was shown to be 70.3%; and that he made the statement on the report reading "Phormium is known as New Zealand flax or hemp, but it is not a true flax or a true hemp" for the information of the Customs Examiner "to let him know what was meant by flax."

The witness further testified that during the 29 years he had been passing on and analyzing phormium he had been passing it "as phormium and not flax."

On cross-examination the witness testified as follows:

XQ. When you identify a fiber under the designation of flax, you do so as under the scientific meaning of the term "flax"?

A. Yes.

XQ. And that is all you do, is that correct, you identify the fiber according to its scientific understanding, is that correct?

A. Yes.

The testimony of this witness, in our opinion, would not be sufficient of itself to establish a long continued administrative practice as to actual classification by Customs Collectors, but it harmonizes with the official statements in the Summary of Tariff Information hereinafter alluded to.

The brief before us on behalf of the Government states that a search of the cases revealed no judicial decision dealing with the classification of *phormium tenax*, and counsel for the Government, like the trial court, relied, and now rely, strongly upon the principle of legislative ratification of administrative practice to support the collector's classification, it being contended that

* * * it seems clear that the Tariff Commission had informed Congress that the administrative practice was to classify New Zealand flax under paragraph 1582, as fibrous vegetable substances, and not under paragraph 1001 as flax. Congress is charged with knowledge of this administrative procedure. When it

reenacted the provision for flax in paragraph 1021, acting under evidence of an intent to change the existing interpretations, there is a strong presumption that the administrative practice was ratified.

In reciting the legislative history we follow generally the order followed by the trial court but make some elisions from and some additions to the quotations.

Paragraph 1582, a free list paragraph of the Tariff Act of 1922, read:

Par. 1582. Grasses and fibers: Istle or Tampico fiber, jute, jute butts, manila, sisal, henequen, sunn, and all other textile grasses or fibrous vegetable substances, not dressed or manufactured in any manner, and not specially provided for.

In the Summary of Tariff Information 1929 prepared by the United States Tariff Commission for use in the formulation of the Tariff Act of 1930, it was said at page 2342 of Volume 2:

Paragraph 1582 of the [1922] free list covers vegetable fibers, other than cotton, not elsewhere specially provided for. Vegetable fibers *not* falling within this classification are *flax*, * * * dutiable under paragraph 1001, * * *. [Italics supplied.]

The principal fibers imported under paragraph 1582 are henequen * * *, *New Zealand fiber.* (Italics supplied.)

In a column on page 2343 of the Summary it is stated that in 1927 10,232,320 pounds of New Zealand *flax* (listed under the heading "Fiber") were imported. It also is stated in the text, in substance, that no New Zealand fiber is produced on a commercial scale in the United States.

Volume 17 of the 1942 Edition of Encyclopaedia Britannica at page 777 states that New Zealand flax was cultivated as an ornamental plant in the warmer parts of Europe and North America, and that it had been introduced "for economic purposes" into California.

It will be noted that New Zealand fiber does not appear *eo nomine* in paragraph 1582, *supra,* but by reference to free list paragraph 1684 of the Tariff Act of 1930, which corresponds to said paragraph 1582, it may be seen that New Zealand fiber is provided for *eo nomine* along with several other products not identified *eo nomine* in the 1922 Act.

The trial court also pointed to the fact that the said Summary of Tariff Information in Volume 2, page 2348, treated New Zealand flax and flax independently of each other. Of the former it is said:

NEW ZEALAND FLAX

Description and uses.—This fiber is obtained from the leaves of a swamp lily (*Phormium tenax*) native to new Zealand. It is also cultivated on a small scale in Australasia and in some European countries. The fiber is white, soft, lustrous, and tougher than either flax or hemp, but resists water poorly. It is used principally in cordage, twine, and to a small extent for floor matting, although the best fiber can be woven into a cloth resembling linen duck. When employed in binder twine, baling rope, and cordage it is usually mixed with sisal or manila.

Production.—Statistics of foreign production are not available.

Imports.—Average annual imports for consumption of New Zealand flax amounted to 4,953 tons, valued at $532,806, under the act of 1909; to 6,183 tons, valued at $1,415,947, under the act of 1913; and to 4,640 tons, valued at $746,105, under the act of 1922 to the end of the calendar year 1927.

A table accompanies the foregoing in which are listed the importations of New Zealand flax during the years 1919-1928, inclusive. According to the Summary such importations—at least those imported while the Tariff Act of 1922 was in effect—were admitted duty free, being classified under paragraph 1582 of that act. The inclusion of New Zealand flax in free list paragraph 1684 of the 1930 Act obviously constituted legislative ratification of the prior administrative practice.

The statement of the said Summary with respect to flax, which, as has been stated, was represented to Congress as having been classified under dutiable paragraph 1001 of the 1922 Act, is found in the discussion of that paragraph at page 1615 of Volume 2 of the Summary. It reads:

## FLAX

Description and uses.—Flax is the oldest of all vegetable fibers recorded as being applied to the use of mankind. * * * A demand for flax persists because of its inherent beauty, strength, and durability, which enable it to survive repeated handling and washing with less loss of its sheen and hard surface and without napping. Flax is used for thread, fish lines, fish nets, water hose, towels, table and bed linen, handkerchiefs, and dress goods.

Flax straw is the dried stem of the flax plant before the extraction of the fiber. Flax, not hackled, is the fiber that has been taken from the straw by retting (rotting away the retentive gum) and scutching (knocking out the woody core from the surrounding fibers), but which has undergone no further treatment. Hackled flax consists of the longer fibers after the more or less complete combing out of the shorter fibers by hand or machine hackling operations. Flax that has been completely hackled is known as dressed line and is used in making thread and fabrics of the higher grades. Flax tow for spinning consists of the shorter and less valuable fibers discarded in the hackling operations and corresponds to the noil of a worsted mill. The coarse and medium counts produced from such tow form a very important part of the world's output of flax yarns and are extensively used in the manufacture of paddings, crashes, and canvas. * * *

Following its quotations from the Summary the trial court said:

It is particularly interesting to note from the foregoing that flax is a fiber derived from the *stem* of the plant, while *phormium tenax* or New Zealand flax is a fiber obtained from the leaves of a totally different species of plant.

Assuredly, therefore, a distinction was drawn for Congress between true flax and New Zealand flax of which Congress has taken cognizance by providing in paragraph 1684 of the present act that New Zealand fiber shall be free of duty, whereas flax is listed in paragraph 1001 as a dutiable item. There is no sound reason for assuming, in the absence of a showing of a contrary commercial designation, that Congress intended the word "flax" in said paragraph 1021 to include

New Zealand fiber while separately providing for flax and New Zealand fiber in paragraphs 1001 and 1684, respectively. (Italics quoted.)

In view of the showing made as to long continued administrative practice relative to the classification of phormium fibers, or New Zealand flax, differently from the classification of true flax plus the obvious legislative ratification of such administrative practice in paragraph 1684 of the Tariff Act of 1930, we are in agreement with the decision of the trial court.

It may be conceded, as counsel for appellant argues before us, citing authorities, that "Phormium tenax or New Zealand flax is both commonly and commercially known as flax"; that "Presumptively the commercial meaning of a term is the same as the common meaning"; that "the common meaning of a word [in a certain sense] is not an issue of fact but a matter of law"; and that "In arriving at such common meaning courts frequently rely upon the definitions found in dictionaries and similar lexicographical authorities." Indeed, the last three of the quoted statements are elementary in law, and the first is fully established as a fact, but these do not alter the long established rule, so frequently asserted, especially in Customs law, and so well known that citation of authorities would be superfluous, to the effect that legislative intent constitutes the master rule for the guidance of both the administrative and judicial branches of the Government, nor do they alter the fact that Congress has expressly differentiated "true" flax from "false" flax for duty purposes.

It seems to us that an anomalous result, contrary to the legislative intent, would flow from classifying an article composed in chief value of New Zealand flax, which as material is duty free, as though it were composed in chief value of a material distinguishable from such New Zealand flax by all the lexicographic authorities and made classifiably different for tariff purposes by express legislative action.

It has not been questioned, so far as the record shows, that true flax is used in rugs. In the definition quoted from the 1949 Edition of Webster's New International Dictionary, *supra*, it is stated to be "used in the manufacture of * * * floor covering, esp. in the warp of wool carpets and rugs." That definition made no distinction between floor coverings and rugs, but in paragraph 1021 of the Tariff Act of 1930 Congress made a distinction for tariff purposes. Rugs wholly or in chief value of flax are specially provided for along with carpets, mats and mattings of flax, at a duty rate of 35 per centum ad valorem, and separate provision for "all other floor coverings not specially provided for" at a rate of 40 per centum ad valorem is then made.

If it had been shown in this case that true flax was not used in rugs, the courts would have been confronted with a different situation, but no such showing was made.

In the brief for appellant some reliance seems to be placed upon certain phraseology used in a charge to a jury by a United States Judge in the Circuit Court of the Eastern District of Pennsylvania, April 1, 1890. The brief states:

* * * the court was called to pass upon an article invoiced and entered as East India Bombay hemp. Upon testimony that the article was known in the trade as East India Bombay hemp and was described as hemp with a reference to where it was grown the court held the article to be dutiable as hemp. In this case the court noted also that the article was a species of hemp and known and designated as such.

We have examined the case, which is styled *Bailey et al.* v. *Cadwalader*, 43 Fed. 294. It is not made clear in the report of the case under what tariff act the controversy arose, but whatever act it was, we do not find in the charge of the judge anything which impresses us as being in any respect controlling here.

For the reasons stated the judgment of the United States Customs Court is *affirmed*.