BEFORE THE FIRST DIVISION, JUNE 25, 1963

No. 67859.—Dollar Trading Corp. v. United States, protest 60/30708 (New York).

OLIVER, Chief Judge: This protest relates to certain merchandise that was assessed with duty at the rate of 35 per centum ad valorem, under the provision

in paragraph 1506 of the Tariff Act of 1930, as modified by T.D. 53865, supplemented by T.D. 53877, for "Brushes, not specially provided for (except paint brushes)." Although several claims are made in the protest, the one on which plaintiff relies is for classification under the residuary provision of paragraph 397 of the Tariff Act of 1930, as modified by T.D. 54108, for articles, composed wholly or in chief value of steel, not specially provided for, with a dutiable rate of 19 per centum ad valorem. While the claim for classification as a handtool under paragraph 396, as modified by T.D. 52373, supplemented by T.D. 52462, was not formally abandoned, plaintiff's brief is directed entirely to the claim for classification as steel articles. Thus, we regard as the sole question before us to be whether the article in question is a brush. If so, the collector's classification must stand; otherwise, plaintiff's claim under paragraph 397, as amended, *supra*, will be sustained.

From an examination of the sample in evidence (plaintiff's exhibit 1), it appears that the merchandise in controversy has the general appearance of a brush. It consists of a wooden head or block of an overall length of 13½ inches. Embedded therein and extending for 6½ inches of the length thereof are tufts of steel wire, approximately 1¼ inches long and arranged in rows of three. The remaining 7 inches of the head or block are curved in a manner to form a handle for the article, which is a hand-operated instrument. It is agreed between the parties that the "articles before the Court are composed in chief value of steel, not plated with platinum, gold, or silver, or colored with gold lacquer." (R. 46.)

Plaintiff's sole witness was its president at the time of importation of the present merchandise. The gist of his testimony is that the article in question is not a brush, because its use—the removal, by drawing the instrument back and forth, of rust or blistered paint from metal surfaces and scales from forgings—is a scraping operation and not a cleaning process. He explained the distinction as follows (R. 15):

Well, a cleaning suggests to me scrubbing or sweeping to eliminate dust and dirt. The object of this article is not to eliminate dust or dirt but eliminate a part of the surface. A corrosion resulting from the oxidation of the metal is removed, and this is not dirt or dust.

The line of demarcation drawn by the witness between "scraping" and "cleaning," so far as the present merchandise is concerned, is reflected in the following excerpt from his testimony (R. 15–17):

CHIEF JUDGE OLIVER: * * * Given a rusting metal article, be it an article that is a forging, a casting, whatever the case may be—it is rusty. Now, you say with the use of this article you remove the rust, is that right?

THE WITNESS: Yes, your Honor.

CHIEF JUDGE OLIVER: Would you call it a cleaning operation to clean up the article and remove the objectionable rust feature?

THE WITNESS: No, your Honor.

CHIEF JUDGE OLIVER: What word would you use in place of "cleaning"?

THE WITNESS: Scraping.

[BY MR. TOMPKINS]: Q. Will you explain that more fully?—A. Cleaning is the removal of foreign matter, dust, dirt, or filth. And the material that we are removing falls under neither of these classifications. It is actually a part of the thing that is being cleaned.

JUDGE WILSON: Have you ever seen this used in a butcher shop on a large block to scrape off the block?

THE WITNESS: Yes, but it's for scraping some of the wood. While it's scraping the wood it's digging into the wood and removing part of the wood.

JUDGE WILSON : Isn't the real purpose of that to clean off accumulated waste and filth from the block?

THE WITNESS : I would say that in order to eliminate this waste from the block you would have to scrape off part of the block, too.

JUDGE WILSON : Its purpose is to clean the block up so that it will be sanitary for further usage, isn't it?

THE WITNESS : Well, this won't sanitize it, your Honor.

JUDGE WILSON : But it will clean all the accumulated grease and meat particles that are on there?

THE WITNESS : Well, the only way to get into this article that you are speaking of is to scrape, actually, into the wood. By removing the wood whatever is embedded into it, that is a by-product.

The witness testified further that he sells the articles involved herein as "wire scrapers" and that he has "known them to be sold as wire brushes," which designation he characterized as "mistaken nomenclature."

In agreeing with the definition of the verb, "clean," meaning "to render clean ; to free from whatever is foul, offensive, or extraneous; to purify, to cleanse" (Webster's New International Dictionary), the witness stated that the article under consideration could be used to clean pipe threads.

Confronted with the definition of the noun, "brush," from Webster's New International Dictionary, second edition, unabridged (p. 345), as follows :

brush * * * A device composed of bristles, vegetable fibers, wire, or the like, set in a suitable back or handle of wood, ivory, metal, or the like, and used for cleaning, scrubbing, painting, etc.,

the witness stated that the article in question is not a brush within the quoted definition, because it is not used for cleaning or scrubbing, and it does not paint.

Defendant's witness stated that he had been in the brush business for 61 years—manufacturing and selling—which included service as president of the Rubico Brush Manufacturing Co. and vice president of the parent organization, the Osborn Manufacturing Co. of Cleveland, Ohio. In outlining his experience, the witness testified that "originally I was a brush maker on the bench" and "Gradually I worked up to supervision, and then I became president of the company, and did all the selling." (R. 48.) In the course of his selling experience, he sold articles like the present merchandise (exhibit 1, *supra*) to railroads, where it is a "big item." He described the article under consideration as a machine-made brush, the wires being stapled in by machine, and identified it as a "wire scratch brush, 3 rows" of the "shoe handle" type. (R. 51.) Specifications, which the witness authored for the Association of American Railroads and which were followed by the brush industry (defendant's exhibit B), cover "paint and varnish brushes for master painting and utility purposes; also roof, scrub, wash, duster and wire brushes which are in general railroad use," and include references, with detailed descriptions, of wire scratch brushes. Consistent with his designation of the article in question as a brush, and not a scraper, the witness testified that a scraper is an instrument, a plain piece of metal with handle, made "differently than this brush is" (R. 72) and pointed out the difference through the illustration of a steel wire scratch brush, "STRAIGHT HANDLE—SCRAPER ATTACHED" (defendant's exhibit E), depicting the scraper, a solid piece of metal, secured to the top of the brush. Distinguishing further between the article in question (exhibit 1) and a scraper, the witness stated that "scraping is lifting," whereas the present merchandise is used in a backward-and-forward motion, common to a brush.

Plaintiff contends that the article in question is a scraper and not a brush. The point is stated in counsel's brief as follows:

While the scrapers under protest remove or scrape away, and in that sense they clean off a surface, such an interpretation should not be applied here because the ordinary use and purposes of brushes is to clean by brushing over or rubbing over, not by scraping off or scratching out the surface—not by removing and marring the surface.

Plaintiff's argument, as presented in the foregoing quotation, suggests that use, or the method of use, should be an important consideration in determining the present issue. This is not so. In *Nestle-Lemur Company* v. *United States*, 37 Cust. Ct. 209, C.D. 1825, referring to the provision for brushes in paragraph 1506, we stated as follows:

* * * There is no question, however, but that the term as used in the tariff act provision, hereinbefore quoted, is not a use designation but is an *eo nomine* designation, that is to say, the test of classification is not the use of the article, but its name. Under these circumstances, use, in the condition as imported, is not a necessary concomitant of articles classifiable as brushes; it is sufficient if, in the condition as imported, they respond to the name of "brush." * * *

The issue herein does not involve the principle of commercial designation. Common meaning is a proper subject for discussion, and, in consideration thereof, the usual rule is to consult lexicographic authorities. *United States* v. *Tropical Craft Corp. et al.*, 42 CCPA 223, C.A.D. 598. We proceed accordingly.

Funk & Wagnalls New Standard Dictionary defines the noun, "brush," as follows:

An implement made of bristles, hair, feathers, broom-corn, sea-grass, or other fibrous and flexible material, fixed to a handle or a back, and intended to be swept or rubbed over surfaces: for cleansing, furbishing, smoothing, applying colors or varnish, etc.

In Webster's New International Dictionary, there appears the following definition:

brush, *n.* * * * 1. A device composed of bristles, vegetable fibers, wire, or the like, set in a suitable back or handle of wood, ivory, metal, or the like, and used for cleaning, scrubbing, painting, etc.

The Encyclopaedia Britannica includes the following comprehensive definition of "Wire Brushes":

Using metal wire for the brush material, these include flue brushes, *brushes for cleaning butchers' blocks* and the steel surfaces of boilers, as well as castings in the foundry. These may be hand-drawn, staple set, or twisted-in-wire, or steel-gript. [Italics supplied.]

Maple and birch are chiefly used for the backs, galvanized steel wire for the twisted-in-wire handles, and also different gauges of wire for filling the wooden handles or stocks.

Under the foregoing definitions, the article involved herein is a brush, and, more particularly, a steel wire brush. The essential elements of the quoted definitions can be attributable very readily to the brush in question, consisting, as it does, of a wooden head, sufficiently long to serve not only as the handle but also as the block in which are set the strands, or tufts, of steel wire. Directly applicable to the present merchandise is the cited definition of "wire brushes," and of particular significance, in the light of plaintiff's testimony, hereinabove set forth in detail, is the reference therein to "brushes for cleaning butchers' blocks."

To support argument that the term, "scratch brush," employed by defendant's witness in his identification of the present merchandise, "does not of itself suffice

to bring it within the tariff provision for brushes," plaintiff cites a line of cases wherein an imported commodity whose designation included a word, descriptive of the product *eo nomine* provided for in the tariff act, was excluded from classification under the *eo nomine* tariff provision. The series of cases appears in counsel's brief as follows:

A provision for "sponges" does not include rubber sponges—*Smith v. United States*, 143 Fed. 691.

A provision for "hemp" ("rugs, wholly or in chief value of x x x hemp") does not include sisal hemp—*G. J. Kluyskens v. United States*, 11 Cust. Ct. 122, C.D. 808.

A provision for "rolled oats" does not include feeding rolled oats—*F. A. Forrest v. United States*, 2 Cust. Ct. 425, C.D. 169.

A provision for "tapes" does not include ladder tapes—*United States v. Walter*, 4 Ct. Cust. Appls. 95, T.D. 33371.

A provision for "sand" does not include fire sand—*Henderson & Hall v. United States*, 4 Ct. Cust. Appls. 327, T.D. 33523.

A provision for "bread" does not include ginger bread—*United States v. Neuman & Schwiers*, 6 Ct. Cust. Appls. 228, T.D. 35467.

A provision for "shingles" does not include asbestos shingles—*J. W. Hampton, Jr., & Co. v. United States*, 12 Ct. Cust. Appls. 490, T.D. 40695.

A provision for "oil-cake meal" does not include cod-liver oil-cake meal—*United States v. Wilfred Schade & Co.*, 16 Ct. Cust. Appls. 366, T.D. 43092.

A provision for "mahogany" does not include Philippine mahogany—*United States v. Hoyt, Shepston & Sciaroni*, 16 Ct. Cust. Appls. 502, T.D. 43236.

A provision for "bricks" ("all other bricks") does not include glass bricks—*Marks Brothers, Inc. v. United States*, 30 C.C.P.A. (Customs) 35, C.A.D. 210.

A provision for "digitalis" does not include digitalis lanata—*Burroughs-Wellcome Co., Inc. v. United States*, [sic] 43 C.C.P.A. (Customs) 142, C.A.D. 621.

A provision for "sprinkler tops" does not include rotary lawn sprinkler tops. *United States v. Durst Mfg. Co., Inc.*, 46 C.C.P.A. (Customs) 74, C.A.D. 700.

The cases, immediately heretofore set forth, are clearly distinguishable from the present case. In all of them, the court found that the merchandise under consideration was not included within the common meaning of the statutory term involved. In this case, the preponderance in weight of the evidence, including the sample (exhibit 1, *supra*), establishes that the article in question is a brush within the common meaning thereof.

The cases of *Spiegel Bros. v. United States*, 61 Treas. Dec. 1489, Abstract 19187, and *Same v. Same*, 62 Treas. Dec. 1011, Abstract 22136, cited in plaintiff's brief, have no controlling influence herein. Both cases were based on agreed sets of facts that established classification of the merchandise. Neither of them are to be regarded as precedents, or authorities, to be followed.

Careful consideration has been given to all of the cases cited and authoritative references quoted in the briefs filed by counsel for the respective parties, but we have referred herein only to those cases and references deemed helpful toward our disposition of the issue.

On the basis of the record before us and for all of the reasons hereinabove set forth, we hold the articles in question to be properly classifiable under the provision in paragraph 1506, as modified, *supra*, for brushes, not specially provided for, and dutiable thereunder at the rate of 35 per centum ad valorem, as assessed by the collector.

The protest is overruled and judgment will be rendered accordingly.